**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA**                                                       **PLAINTIFF**

**v.**                              **Case No. 4:20-cr-00264 KGB**

**CLEVELAND BAILEY**                                                                **DEFENDANT**

<u>**ORDER**</u>

Pending before the Court is separate defendant Cleveland Bailey's motion to suppress (Dkt. No. 14). The government responded in opposition to the motion (Dkt. No. 17). The Court conducted a hearing on the motion at which the Court received evidence, testimony, and argument (Dkt. No.30–31). This matter is ripe. For the following reasons, the Court denies Mr. Bailey's motion to suppress (Dkt. No. 14).

**I.     Factual Background**

Little Rock Police Department ("LRPD") Detective Chris Henderson testified at the hearing on the motion. He has served as a police officer approximately eight years. On December 21, 2019, he was a detective assigned to the major crimes, violent crimes unit. At the time of his testimony, he had transferred to the homicide unit.

At approximately 2:00 a.m. the morning of December 21, 2019, shots were fired outside Club 428 in Little Rock, Arkansas. According to Mr. Bailey's filings in this case, Mr. Bailey was outside Club 428 sitting in a 2004 silver Cadillac SRX. Julius Hodges was standing outside of Club 428 talking to people. According to reports, a 2004 to 2007 silver Malibu slowly drove by, and the driver shot a gun. The silver Malibu then sped away. Mr. Hodges was struck in the left buttocks. He got into Mr. Bailey's car, and Mr. Bailey took Mr. Hodges to St. Vincent Hospital.

Also according to Mr. Bailey's filings, at the time of the shooting, Mr. Hodges was talking to individuals in a Nissan Sentra.  Those individuals in the Nissan Sentra witnessed the shooting and followed Mr. Bailey's car with Mr. Hodges in it to St. Vincent Hospital.

LRPD officers in the area of Club 428, including Detective Henderson, responded to the report of a shooting outside Club 428.  While on the scene, Detective Henderson did not know who the victim was, who the suspect was, or who anyone was that might have been involved in the shooting.  He testified that there were not any witnesses on the scene who wanted to make contact with the LRPD officers or who would provide any information.  He also testified that, although a search of the scene was conducted, no shell casings were located.  While officers were responding, LRPD communications broadcasted that a gunshot victim was brought to St. Vincent Hospital Emergency Room.  St. Vincent Hospital employees told LRPD that Mr. Bailey drove Mr. Hodges to St. Vincent Hospital.

According to the affidavit for search and seizure warrant submitted by Mr. Henderson, LRPD officers observed what appeared to be blood on the interior front passenger seat of Mr. Bailey's vehicle "in plain sight" and secured Mr. Bailey's vehicle as evidence (Dkt. No. 14-1, at 1).  Detective Henderson testified that, at the time the blood was noticed, the vehicle was seized and taken to the crime scene base.  He also testified that the area around the vehicle was searched. The search of Mr. Bailey's vehicle is the basis for this motion to suppress.  LRPD officers also observed the Nissan Sentra at St. Vincent Hospital with a suspected gunshot on the car.

LRPD detectives spoke to Mr. Hodges at St. Vincent Hospital, and Mr. Hodges told them that the suspect vehicle was a 2004 to 2007 silver Malibu.  Mr. Hodges explained that he did not know the individual, Mr. Bailey, who brought him to the hospital.  LRPD spoke to Mr. Bailey. Detective Henderson testified that Mr. Bailey was not truthful with officers initially as to the

transfer of Mr. Hodges to the hospital, but Mr. Bailey ultimately did admit that he transported Mr. Hodges but refused to provide a written statement (*see also* Dkt. No. 14-1, at 1). Mr. Bailey stayed with Mr. Hodges at the hospital until LRPD officers arrived.

LRPD detectives also spoke with Shuanteika Summons, a friend of Mr. Hodges, who followed Mr. Bailey to St. Vincent Hospital in the Nissan Sentra (Dkt. No. 14-1, at 2). Ms. Summons could not provide s suspect description but identified the suspect vehicle as a silver, older model sedan. LRPD detectives spoke with Courtney Greenlee and Keaerial Henderson who were in the Nissan Sentra with Ms. Summons (*Id.*). Ms. Greenlee was unable to provide any suspect information. Ms. Henderson described the suspect as a black male wearing a mask covering his face and driving a light colored Malibu.

On December 21, 2019, Detective Henderson presented the affidavit for search and seizure warrant to the sitting Little Rock District Judge. Prior to submitting the affidavit, Detective Henderson did not have the benefit of reviewing surveillance video from Club 428. At the time, he was aware that the Nissan Sentra had been struck by a bullet. The affidavit for search and seizure warrant submitted by Detective Henderson states that the Nissan Sentra was secured as evidence (Dkt. No. 14-1, at 1).

Detective Henderson submitted the affidavit for search and seizure warrant and the search warrant to the Judge in support of his request for a search warrant (Dkt. No. 14-1). At the time he submitted the affidavit, Detective Henderson did not believe Mr. Bailey was the subject of a shooting investigation or had anything to do with shooting Mr. Hodges. However, Detective Henderson believed that there could be evidence of the shooting of Mr. Hodges in Mr. Bailey's vehicle. Detective Henderson testified that, through his training, knowledge, and experience, he has seen instances where a projectile is located, fragments of ammunition are located, or a cartridge

casing is located in the victim's clothes or inside a vehicle after the victim has been shot.  He testified it was possible that, once Mr. Hodges got into Mr. Bailey's vehicle, anything that might have come from the suspect or the firearm used by the suspect could have possibly been transferred inside of the vehicle once Mr. Hodges entered the vehicle and was transported to the hospital. According to Detective Henderson, stray bullets and evidence of that sort is helpful in investigating a violent crime like a shooting and may be submitted to the Arkansas State Crime Laboratory for analysis.

Further, Detective Henderson testified that he needed to verify that Mr. Hodges was being truthful and that he was not armed when this situation occurred by ensuring no firearm from Mr. Hodges was located in the vehicle.  When preparing the affidavit, Detective Henderson requested authorization to search for items including but not limited to weapons, ammunition, DNA, clothing, narcotics, currency, and any other items associated with the planning and execution of the crime, stating that he was of the opinion that there was evidence in Mr. Bailey's vehicle and that such evidence was used in the incident being investigated (Dkt. No. 14-1, at 2).

The Judge signed the search warrant the morning of December 21, 2019, at approximately 8:15 a.m., and LRPD officers searched Mr. Bailey's vehicle.  LRPD officers located a loaded firearm and narcotics on the driver's side of the vehicle.

II.     **Legal Analysis**

A.     **Controlling Law**

The Fourth Amendment specifically provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."  U.S. Const. amend. IV.  "Fourth Amendment rights are personal rights which. . .

may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (citations omitted); *Alderman v. United States*, 394 U.S. 165, 174 (1969) (citation omitted).

The Fourth Amendment to the United States Constitution also states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  As a result, the Fourth Amendment establishes two requirements:  (1) particularity and (2) probable cause.  *United States v. Swift*, 720 F. Supp. 2d 1048, 1055 (E.D. Ark. 2010) (internal quotations omitted).

An affidavit must provide a substantial basis for determining the existence of probable cause for issuance of a search warrant.  *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999).  An affidavit supporting a search warrant is presumed to be valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

"Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009)).  The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence.  *Etheridge*, 165 F.3d at 657.  "[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  *Id.* at 656.

Even if this Court were to assume without deciding for purposes of resolving the motion to suppress only that the warrant executed December 21, 2019, lacked probable cause and was based upon a Fourth Amendment violation, that does not automatically result in the suppression

of evidence obtained during the execution of the search warrant.  "Before 'reviewing the existence of probable cause,' this court 'may consider the applicability of the good-faith exception to the exclusionary rule,'" which permits evidence obtained in reliance on an "objectively reasonable" warrant.  *United States v. Addidas Williams*, 976 F.3d 807, 809 (8th. Cir. 2020) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).

In other words, the "exclusionary rule is not applied in cases 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'"  *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897 920 (1984)).  "In cases of good faith, the evidence, although seized pursuant to a warrant that lacked probable cause, nonetheless is admissible at trial."  *Id.*  The good-faith exception applies unless the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S at 923.

*Leon* identified four circumstances in which an officer's reliance on a warrant is not in objective good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned her judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant  is so facially deficient that  no police officer could  reasonably  presume  the warrant to be valid.

*United States v. Proell*, 485 F.3d 427 (8th Cir. 2007) (citation and internal quotations omitted).  "Entirely unreasonable is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words."  *United States v. Ross*, 487 F.3d 1120, 1122–23 (8th Cir. 2007).

### B.    Analysis Of This Case

Mr. Bailey asserts that his Fourth Amendment rights were violated and that the evidence seized should be suppressed.  He maintains that there is no probable cause in the search warrant documents to search his car nor any nexus between the crimes being investigated and Mr. Bailey (Dkt. No. 14, at 3–8).  He argues that he was merely present near a criminal act, not involved in it, and "was essentially a de facto ambulance driver and his Cadillac a de facto ambulance." (*Id.* at 4).  It is undisputed Mr. Bailey was not being investigated as the shooting suspect.  Mr. Bailey argues that the appearance of blood on the seat of his car does not connect Mr. Bailey to the crime. He asserts that he merely drove Mr. Hodges to the hospital and maintains that his actions should not subject him to police intrusion on his privacy (*Id.*).

Further, Mr. Bailey asserts that none of the good-faith exceptions set forth in *United States v. Leon*, 468 U.S. 897 (1984), apply here (Dkt. No. 14, at 9–13).  In his filings, Mr. Bailey maintains that "[t]he suggestion that Mr. Bailey was involved in the shooting, if this was intended, is obviously misleading on its face." (*Id.*, at 11).  During his testimony, Detective Henderson stated unequivocally that Mr. Bailey was not a subject in the shooting, so the Court rejects this argument advanced by Mr. Bailey.  Mr. Bailey also asserts that "[t]he state district judge abandoned her judicial role in not identifying the glaring absence of any nexus between the violent crimes being investigated, Mr. Bailey, and his car – and not signing off." (*Id.*).  Mr. Bailey claims that, because he was not the shooting suspect or an accomplice, there is no nexus and, therefore, no probable cause in the four corners of the affidavit to create a reasonable basis upon which an officer could rely (*Id.*).  Further, Mr. Baily also argues that the affidavit "contains no allegation that useful evidence leading to the actual suspect would be found in Mr. Bailey's car." (*Id.*).

The government asserts that, even if Mr. Bailey was not considered a suspect in the shooting, that fact is not determinative as to whether probable cause to search his vehicle existed (Dkt. No. 17, at 5). Instead, the government argues that a sufficient nexus existed between evidence of the shooting of Mr. Hodges and Mr. Bailey's car, when the totality of the circumstances are considered (*Id.*). The government maintains that there exited a fair probability that evidence pertaining to the shooting, particularly forensic evidence, would be found in the vehicle (*Id.*, at 5–6). In the alternative, the government argues that the good-faith exception to the exclusionary rule applies here and that this Court should deny Mr. Bailey's motion to suppress (*Id.*, at 6–8).

Having considered the record before it, the Court concludes that Detective Henderson's affidavit submitted in support of the search warrant application established a sufficient nexus between evidence of the shooting of Mr. Hodges and Mr. Bailey's vehicle. Although not a suspect, Mr. Bailey initially denied even transporting Mr. Hodges to the hospital and refused to provide a recorded statement. Blood evidence was in plain view on the seat of Mr. Bailey's vehicle, and Detective Henderson knew Mr. Hodges suffered from a gunshot would. Mr. Hodges denied knowing Mr. Bailey but described the events leading up to Mr. Hodges appearing at the St. Vincent Hospital Emergency Room. The Nissan Sentra was shot, and the passengers of that vehicle provided their statements to Detective Henderson. Considering the totality of the circumstances, this Court concludes the affidavit supported a finding of probable cause. In the alternative, the Court determines that, even if there was not probable cause for the issuance of the warrant, the good-faith exception applies because the LRPD officers who executed the warrant relied on the Judge's determination of probable cause in good faith. The Court rejects the argument that the

affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S at 923.

### III.    Conclusion

For all of the foregoing reasons, the Court denies Mr. Bailey's motion to suppress (Dkt. No. 14).

It is so ordered this 11th day of August, 2022.

Kristine G. Baker
United States District Judge